In re WATERLOO ORGAN CO.

(District Court, W. D. New York. August 16, 1906.)

No. 1,073.

1. MORTGAGES—FORECLOSURE—PROCEEDS OF SALE—DUTIES OF TRUSTEE—INTEREST ON FUNDS.

A bankrupt corporation had issued bonds secured by a mortgage which, after the bankruptcy, was conceded to be valid as to two-fifths of the property, but was contested by the trustee as to the remainder. The court ordered a sale of the property and the immediate distribution of two-fifths of the proceeds among the bondholders proving their claims, and that the remaining three-fifths should be retained by a bank, which was trustee under the mortgage, at 3 per cent. interest, until the right thereto should be determined. The bank bought the property for the

bondholders and resold the same, and, owing to unexpected litigation over the validity of certain of the bonds, the entire proceeds of the property remained in its possession for some years. *Held*, that while it was its duty under the order of the court to keep the two-fifths available for distribution at any time, it was also its duty, as trustee, for the bondholders to exercise such reasonable care over the fund as would result in a fair increment, and that, having retained such fund in its own possession, it would be charged interest thereon at the same rate it was required to pay on the remaining three-fifths.

2. SAME—COMPENSATION OF TRUSTEE.

Where a corporation mortgage provided that the trustee should receive "just compensation," such compensation should be computed on a quantum meruit with reference to the particular circumstances of the case and the nature of the services rendered. Where the property was sold in bankruptcy proceedings against the mortgagor, was bought in and resold by the trustee for the benefit of the bondholders, and the trustee also defended a suit brought by the bankruptcy trustee for the recovery of a large part of the property as to which he claimed the mortgage to be invalid, an allowance to the trustee of 2 per cent. on the proceeds of the property not in dispute, disbursed by it, was reasonable and proper, and it was also entitled to be reimbursed for its expenditures in defending the suit from the same fund.

3. SAME—DISTRIBUTION OF FUND—EXPENSES INCURRED BY TRUSTEE IN BANKRUPTCY.

A trustee in bankruptcy of a corporation is not entitled to be reimbursed from the proceeds of mortgaged property for expenses and attorney's fees paid out by him in litigating the right of certain of the bondholders to share in the fund, which expense was principally incurred for the benefit of the general creditors.

In Bankruptcy. On review of order of referee.

See 128 Fed. 517.

The following is the statement and opinion of Charles A. Hawley, Referee:

### Statement.

The bankrupt had made and issued corporate bonds secured by mortgages which purported to cover after-acquired property. Two-fifths of the property was conceded to be subject to the lien of the mortgages; as to the three-fifths of the property which was after acquired, the lien of the mortgages was disputed. An order for the sale of the property was made, which, among other things, provided "that immediately after said sale the said two-fifths of the entire proceeds thereof shall be distributed by this court in pro rata payments to the holders of the bonds of the said bankrupt which are secured by the said mortgages and which shall be established before this court as valid obligations of said bankrupt." The order then provided for the retention of the other three-fifths of the proceeds by the First National Bank of Waterloo, trustee for the bondholders under said mortgages, upon interest at 3 per cent. for full months pending the controversy as to the title thereto. As to said three-fifths, the trustee in bankruptcy brought suit against the bank (trustee under the mortgages) in the Supreme Court of the state of New York, succeeded at the trial and at the Appellate Division, and the case is now pending on appeal to the Court of Appeals.

After the sale opportunity was given to the bondholders to establish their bonds before me. The bondholders filed proofs of their bonds as secured debts in the ordinary form, the security being said mortgages, and all of the bonds, of which proofs were so filed, were proved and allowed, except 2 of $500 each, presented by Francis Bacon, and 21 of $500 each, presented by the First National Bank of Waterloo. The 2 bonds presented by Mr. Bacon and the 21 by the Bank were objected to by the trustee in bankruptcy and hearings were had thereon. On November 7, 1903, the referee filed de-

cisions allowing the claims of Mr. Bacon and the bank upon said disputed bonds. Petitions for review were filed and allowed, and the decisions were affirmed by the District Court. Thereupon, the cases were taken by the trustee in bankruptcy to the Circuit Court of Appeals where the order of the District Court as to the 21 bonds held by the bank was affirmed, and that as to the 2 bonds held by Francis Bacon was reversed. In re Waterloo Organ Co., 13 Am. Bankr. Rep. 477, 134 Fed. 345, 67 C. C. A. 327; Id., 13 Am. Bankr. Rep. 466, 134 Fed. 341, 67 C. C. A. 255. The decision of the Circuit Court of Appeals as to Bacon's 2 bonds was made the decision of the District Court by a final decree after appeal, dated April 20, and filed with me April 23, 1906. The decision of the Circuit Court of Appeals in the case of the 21 bonds held by the bank was made the judgment of the District Court by an order made June 9, 1906, and filed with me June 12, 1906. Thereupon, the trustee in bankruptcy filed his petition, reciting the proceedings, and asking, among other things, that the owners of said bonds should show cause why a decree should not be made, fixing and determining their respective pro rata shares of the said two-fifths of the proceeds of the sale of said property. Thereupon, an order to show cause was granted. The First National Bank filed an answer to such petition, and also filed a petition for an adjustment of its compensation for services and reimbursement of its expenses, as trustee in said mortgages; and the trustee in bankruptcy also filed a claim for services and disbursements. A hearing was had thereon, and the matter is now before me for decision.

## Opinion.

Five questions are presented for determination:

1. Counsel for the bank as trustee contends that the trustee in bankruptcy has no standing to prosecute the present litigation.

That contention, I think, must be overruled. The bonds which are here involved were proved against the bankrupt's estate as secured debts; the security being the mortgaged property out of the sale of which the fund arose. It is quite evident, then, that the larger the fund realized here for the bondholders the smaller will be their claim over against the general estate of the bankrupt for the balance remaining unpaid upon their bonds; and so the trustee is interested. But the question is not important, for Messrs. O'Brien & Short appear for a bondholder, and raise the same questions raised by the trustee in bankruptcy. The trustee in bankruptcy also claims that as matter of fact he represents at least 6 of the 13 bondholders.

2. Whether the bank, as trustee for the bondholders, shall be charged with interest upon the two-fifths of the proceeds, and, if so, at what rate.

By the order of sale it was apparently in contemplation that the bank, as trustee for the bondholders, would become the purchaser of the property, and the order evidently contemplated a retention of three-fifths of the proceeds awaiting the determination of the controversy in respect thereto, and the immediate distribution of the two-fifths; the controversy over the bonds held by Mr. Bacon, and those held by the bank not being at that time indicated. The bank, as trustee, did buy the property for the sum of $25,800. Thereupon the proof of the bonds was taken up, and the controversy developed. The bank held the property from the date of the sale, which sale was confirmed December 2, 1902, until about June, 1903, when it sold the property to the Vough Piano Company, a corporation then recently formed, for the same price it bid upon the sale; the piano company to take the property as it then stood, and assume any liability which the bank had incurred in the meantime. I do not understand it to be claimed that up to the time of the sale to the Vough Piano Company that the bank, as trustee, is liable for interest. It appears that on the sale to the Vough Piano Company the bank, as trustee, deeded the entire property, received nothing in payment therefor, and no written obligation of any kind to secure the payment.

About three months after the sale, the Vough Piano Company made a $40,000 mortgage upon the property which it purchased of the bank, and upon about $25,000 worth of other property, and deposited the whole, $40,000, in bonds secured by said mortgage with the First National Bank of Waterloo;

and the inference is perhaps permitted from the testimony that they were held at first as security for the purchase price, and, later, as security for the purchase price and as collateral for what the piano company might owe the bank, with which the piano company has an active account. At the time of these transactions, the Vough Piano Company was composed of William C. Vough, Chauncey L. Becker, and John Becker. Charles D. Becker was its secretary, Charles D. Becker and John Becker were stockholders, and Charles D. Becker, a director in the First National Bank of Waterloo, and Herbert R. Becker (now deceased) was the cashier of the bank. While upon the purchase of the property the Vough Piano Company made no bond, or note, or any written promise to pay the purchase price, the understanding was that it was to be paid whenever the bank called for it. The bank did not call for it until on or about January 20, 1906. Thereupon, the money was paid and deposited in the Exchange National Bank of Seneca Falls; remained there about two months and earned $51 interest; and was then deposited in some bank or savings institution in Rochester at 4 per cent. interest, where it now remains. Under these circumstances, the trustee in bankruptcy and counsel for bondholders claim that during the period intermediate the sale to the Vough Piano Company and the collection and deposit of the money upon interest, the trustee should be charged with legal interest, and one of the counsel contends that this should be computed with quarterly rests. To this contention, counsel for the bank as trustee, replies, that the bank was not the kind of a trustee whose duty it is to make investments; that it was not expected to make investments, but to make immediate payment, and that it was its duty to keep the funds under its immediate control, so that whenever the litigation terminated it would be ready "immediately" to distribute the fund in compliance with the order under which it obtained it. That there was no means by which it could tell when the litigation would be terminated, and that an effort was made to carry the litigation over the 21 bonds held by the bank to the Supreme Court of the United States, which refused to entertain it. I think that the truth lies between these two extremes. The bank, as trustee under the mortgage, was not of that class of trustees whose duty it was to make investments for the purpose of earning income to pay over for the support of the beneficiaries of the trust. Indeed, if it had made permanent investments, such, for example, as executors and trustees for infants are authorized to make, and so have tied up the fund, it would have been guilty of a breach of duty.

Nevertheless, while it was not its duty, as trustee, to seek a permanent investment of the fund at a large rate of interest, it was its duty, as I think it is the duty of every trustee, to exercise such provident care over the fund as would, within the line of its duty, result most largely to the benefit of the bondholders. This is not a case where the trustee has mingled the trust fund with his own, or has gained any advantage from the course of conduct which has been pursued. It is simply a case, I think, where there was a want of diligence and provident care on the part of the trustee. Nor can I escape the conclusion that if, at the time the District Court made its order of sale, the long litigation over the bonds had been presented to the court even in prospectu that the bank would have been directed to hold this fund during the pendency of the litigation at the same rate of interest as was prescribed for the three-fifths of the proceeds of the sale. It is therefore my opinion that justice demands that the trustee should be charged with interest upon the fund at the rate of 3 per cent. per annum for two years intermediate the sale of the property to the piano company and the deposit of the fund with the Exchange National Bank of Seneca Falls; and that to this interest should be added the interest it received from the Exchange National Bank and that which shall be received from the Rochester institution where it is now deposited.

My attention has been called by the briefs on behalf of the bondholders to several cases which it is strenuously insisted require that the bank should be charged with 6 per cent. interest. It does not seem to me that those cases support the contention based upon them; but that they tend rather to support a different conclusion, or are plainly distinguishable from the case at bar.

147 F.—52

Thus, Price v. Holman, 135 N. Y. 124, 32 N. E. 124. was an executor's case where there was a delay in payment arising from the pendency of litigation over a disputed claim. There was a claim for interest upon interest; and it was held that it did not appear that the executor had used the money for his own purposes, or made any profit out of it, and that, in the absence of bad faith, the fact that he appealed from a judgment, and delayed the payment, did not render the executor chargeable. A trustee is not chargeable with interest solely because he deposits the trust funds with his own, or uses them in his business (which was not done here). There must be in addition a breach of trust, a neglect or refusal to invest in the time or the manner the trust agreement or the law points out. Citing with approval upon that question Rapalje v. Hall, 1 Sandf. Ch. 399. Indeed, Price v. Holman causes some hesitation in my mind as to whether the pendency of the litigation was not a sufficient answer to the claim that interest should be charged. If the bank, as trustee, had itself received the money, kept it without using it in its own possession ready to be paid, the principal underlying Price v. Holman would perhaps have called for a different conclusion from that which I have reached.

In re Barnes, 140 N. Y. 468, 35 N. E. 653, is substantially to the same effect. In that case an assignee for the benefit of creditors deposited funds to his individual account, but his account always had a credit in excess of the balance of the trust funds in his hands. The action was brought to set aside the assignment, which was pending for three years. Upon settlement the assignee was charged with 6 per cent. interest. It was held to be error: that the law neither authorizes nor permits the assignee to make any investments. It was his duty to convert the assets into money, keep the moneys, and distribute them at the time and in the manner required by law. And that while it might be, if he perceived the moneys must lie idle for a long time because of the suit pending, and there were solvent institutions known to him in the place where he might have deposited them, subject to withdrawal on demand, and with an allowance for interest, he should be charged with the interest which might thus be earned, he could not be charged beyond that. And the court said (page 473 of 140 N. Y., page 654 of 35 N. E.): "Upon the facts in this case there was no conversion by the trustee to his own private use, and it is not just that he should be charged with any greater amount than the possible loss to the fund by his omission to deposit where some rate of interest might have been allowed. Citing In re Cornell, 110 N. Y. 357, 18 N. E. 142; Beard v. Beard, 140 N. Y. 260, 35 N. E. 488; In re Nesmith, 140 N. Y. 609, 35 N. E. 942; and In re Myers, 131 N. Y. 409, 30 N. E. 135, are, neither of them, I think, in point upon the question here being considered.

3. The claim for compensation to the bank for its services, as trustee, and for its reimbursement on account of expenses in the litigation over the title to the bonds, and in the litigation in the state court over the title to the three-fifths of after-acquired property claimed to be subject to the lien of the mortgages.

(a) As to the services of the bank as trustee, counsel for the bank claims that a trustee under a corporate mortgage is entitled to the same commissions as are allowed by law to an executor or administrator.

I do not think so. Counsel contends, and I have agreed with his contention, that the bank, as trustee, is not of the class of trustees whose duty it is to make investments of funds. I think, also, that the bank is not of that class of trustees who are entitled to the commissions allowed executors. I have examined the various authorities to which he has called my attention. It is necessary only to refer to Meacham v. Sternes, 9 Paige (N. Y.) 398, which contains a practical summary of all the cases and a statement of the principle of law which governs here.

In the first place, it is to be observed that that case was one of an assignment in trust for the payment of debts, not the case of a trustee for bondholders under a corporate mortgage. The court held (page 403) that it may be considered a settled rule that in all cases of trust of this description, and all other express trusts of a similar nature where nothing is said in the deed or

instrument creating the trust, on the subject of compensation to the trustee for his personal services in the execution of a trust, and where there is not an agreement on the subject for a different allowance, that the trustee, upon the settlement of his accounts, will be allowed the same fixed compensation as an executor or administrator. This, upon the theory that the court will consider the statute allowance to executors as tacitly understood and agreed on by the parties to all trusts of a similar nature, where nothing appears to show a different agreement or understanding. But the court goes on to say that where the instrument creating the trust fixes a different compensation, that, of course, must prevail. Where such an instrument contains an express provision that the trustee shall receive a compensation for his services in addition by his expenses and disbursements, leaving the amount of the allowance to be settled upon the principle of quantum meruit, the amount of compensation must necessarily depend to a certain extent upon the peculiar circumstances of each case, and must be adjusted with reference to what is usually paid by the agreement of parties for similar services.

So, too, upon page 401, in the discussion of previous cases, the court said it was not aware "of any case in which the court had, by an express decision, applied the same rule of compensation to an ordinary trustee created by deed or will where no provision was made in the instrument creating the trust to compensate the trustee for his services. For in such instruments express provision is usually made for a fixed compensation to the trustee. Or, at least, to allow him to retain a reasonable sum for his care and trouble in the execution of the trust. So, too, upon page 402, discussing the case of Denniston v. Bleecker & Others, the chancellor says that he suggested in that case that the equity of the statute allowing a fixed compensation to executors and guardians for their services by way of commission might probably be extended to the case of other trustees performing similar services, so as to allow them the same compensation where the instrument creating the trust was silent on the subject. That case, however, was finally disposed of upon the ground that the trust deed evinced an intention on the part of the person creating the trust to allow the trustees to charge a reasonable compensation for their services.

But it is understood that the trust deed or mortgage in this case is not silent upon the subject of the compensation of the trustee. But that it provides, as such corporate mortgages usually do provide, that the trustee shall receive a "just compensation" for its services. It follows therefore, not only that the duties of this trustee are not similar to those of an executor, administrator, or a guardian, but that the case falls precisely within the class where, according to Meacham v. Sternes, "just compensation" excludes the idea that commissions are necessarily to be computed at the statutory rate, but are to be determined upon a quantum meruit, and may be less, or equal to, or even more than the statutory rate, depending upon the circumstances of the case. I know of no instance where a trustee under a corporate mortgage has been permitted to recover percentage computed under the statute applicable to executors and administrators; and think that it is, at least, a matter of common knowledge that their compensation is ordinarily much less than that.

It appears from the testimony here that the ordinary charge is from ¼ to ½ or 1 per cent.: but that testimony seems to be limited to the ordinary payment of bonds and coupons which are duly paid at maturity, and, in the due course of business, without default or litigation. It appears that when the bank, as trustee, bought the mortgaged property it put a manager in charge of it, and that an allowance was made for his services in the judgment rendered in the state court in the litigation over the title to the three-fifths of the property. The testimony, however, permits, and, I think, requires, the inference that the bank, as trustee, has had to exercise some care and attention in the litigations in which it has been involved, both here and in the state court, and it would seem is equitably entitled to some compensation therefor. It is a matter of regret that the testimony is quite indefinite upon this subject, but from my knowledge of the course of the litigations, the testimony and the briefs, which have been submitted to me upon this hearing in regard to the litigation over the bonds, I am persuaded that I shall do no injustice if I

allow the bank ½ of 1 per cent. for the payment of coupons amounting to $8,134.42. The bank is yet to withdraw from its present place of deposit the two-fifths now under consideration, to pay therefrom such expenses as shall be hereinafter allowed, to distribute the net balance among the bondholders, secure their formal receipts therefor, and deliver the same to the trustee in bankruptcy. I think it will be no more than just and equitable, if for the services it has heretofore rendered, and for those hereafter to be rendered, that it shall be entitled to 2 per cent. upon the total amount of the funds, including interest which it will have on hand to divide for the payment of expenses and payment to the bondholders, when the order to be made herein shall be complied with.

(b) As to the reimbursement of the bank, as trustee, for its expenses in the litigation over the bonds and the litigation in the state court as to the title to three-fifths of the mortgaged property.

The bank has filed with me a bill for its expenses for its attorney's services and disbursements amounting to $906.05. The items of this bill and the reasonableness of the charges are conceded. $270.65 of the bill are for expenses for the trustee in the District Court, and no objection is made to their allowance. But it is claimed by the trustee in bankruptcy that the balance of the bill, $635.40, being for attorney's services and expenses in the action in the state court, are not chargeable against the fund now here to be distributed. The argument made is that the bank, as trustee, should be turned over to the fruits of its litigation as to the three-fifths of the property for reimbursement for its expenses. This contention appears to be neither sound nor equitable. It is conceded that the litigation in the state court was not a frivolous, but a substantial, litigation. The trustee in bankruptcy sued the bank as trustee under the mortgage. The action was to determine the title to the after-acquired property, to which both the bank and the trustee in bankruptcy claimed title. Three-fifths of the property (which was nearly the entire estate in bankruptcy) was involved. I think it was the plain duty of the bank, as trustee, to defend that action; and that, if it had not defended it, it, perhaps, would have made itself liable to the bondholders for neglect of duty. Nor do I think that it was an improvident expenditure of time or money to appeal from the decision of the trial court. Price v. Holman, supra; In re Barnes, supra. I do not think that the cases cited from the bankruptcy courts where there have been general assignments for creditors vacated by proceedings in bankruptcy, and allowances to the assignees for services only permitted in so far as such services were beneficial to the bankrupt estate, are at all in point. An assignee accepts his assignment in defiance of the bankruptcy law, and knows that it is liable to be set aside by the intervention of bankruptcy proceedings. The bank was made a trustee long before there was any bankruptcy. It accepted the trust, and was bound by its obligations. It was sued, and defended itself, not unreasonably, but in good faith. It now turned over for its reimbursement, not for services, but for expenses and obligations actually incurred, to the three-fifths, and the decision of the court of last resort shall be against the bank, as trustee, then it will be remediless. These expenditures were incurred by it reasonably, and in good faith, for the benefit of the bondholders, and they ought to be paid by the bondholders, whether the result ultimately is for the advantage of the bondholders or not. Steinway v. Steinway, 112 App. Div. 19–22, 98 N. Y. Supp. 99.

My conclusion is that the bill should be allowed, and that the sum of $906.05, the amount thereof, should be paid by the bank, as trustee, out of the proceeds of the two-fifths which are here for distribution.

4. The trustee in bankruptcy presents a bill for services and attorney's fees in the controversy over the 2 bonds claimed by Mr. Bacon, and the 21 bonds claimed by the First National Bank, amounting, in the aggregate, to $1,362.75, of which $500 in each case, amounting together to $1,000, are for attorney's services of the trustee, and his counsel, Mr. Manning.

Counsel for the bank, as trustee, and for the bondholders, concedes that the disbursements have been made and the services rendered, but does not admit the reasonableness of the charges for the services ($500 in each case), and contends that neither the services nor the disbursements are chargeable against

the fund here for distribution. I think his contention is correct. As has already been said, the claims of the bondholders have been proved as secured claims. The efforts of the trustee in the litigation over the bonds have necessarily been, as they ought to have been, not for the benefit of the bondholders alone, but for the benefit of the general creditors of the bankrupt estate, including the bondholders. And it would be, in my opinion, unjust and inequitable to charge these services and disbursements upon the fund here to be distributed. The charge to the extent of its reasonableness should be against the bankrupt's estate. That, I think, is the trust fund, which should bear this expense of its administration. Woodruff v. N. Y. R. R., 129 N. Y. 27, 29 N. E. 251. Holding to this view, and without examining into or expressing any opinion as to the reasonableness of the charges for attorney's services, I must decline to make either the services or the disbursements a charge against this fund. I do not, by this decision, intend to preclude the trustee in bankruptcy from a future application for reimbursement for these services and expenses out of the fund arising from the three-fifths of the proceeds of the sale, in case he should ultimately be defeated in the litigation over the three-fifths, and the remaining estate of the bankrupt should be insufficient for his reimbursement. My view is, not that he should not in some way be protected for his reasonable expenses and disbursements, but that it ought not at the present time to be charged upon the fund now under consideration.

5. The trustee in bankruptcy, upon the hearing requested the referee to direct the cashier of the First National Bank to deliver to him $10,500 of the notes which the bank produced, made, or indorsed by the Waterloo Organ Company, upon the theory that the bank is required to account to the trustee in bankruptcy for the par value of the 21 bonds held by it as collateral before any dividend is paid to it upon such bonds.

My decision as to the 21 bonds was that the bank was the lawful holder thereof, and entitled to prove the same, and that its claim be allowed. The District Court, upon review, affirmed that order. The order of the District Court affirming my order was as follows: "It is hereby ordered and adjudged that the decision and order made by the said referee in bankruptcy approving and allowing the said bonds be, and the same hereby is, in all respects, approved and affirmed. And the said bonds are, and each of them is, adjudged to be lawfully owned and held by the said First National Bank of Waterloo, N. Y., and that the claim made thereupon is duly approved and allowed in this proceeding." The Circuit Court of Appeals affirmed my order, and adjudged that the 21 bonds were valid and legal claims in the hands of the bank against the organ company; that the bank had a good and valid title thereto; that the bonds were duly and legally proved before me, and the same were duly and legally allowed by me, as properly proved claims, in favor of the bank, and against the trustee in bankruptcy of the organ company.

Thus it appears that my original order, and that of the District Court were affirmed without any modification whatever. But the trustee in bankruptcy claims that under the opinion delivered in the Circuit Court of Appeals (In re Waterloo Organ Company, 13 Am. Bankr. Rep. 477, 134 Fed. 345, 67 C. C. A. 327), the bonds are to be accounted for by the bank at par. Counsel for the bank claims that the opinion does not bear any such construction. The situation necessarily raises the question as to whether resort may be had to the opinion of the court which pronounces judgment, to modify or in any way qualify the judgment so pronounced. I do not think that it is proper or necessary at this time to decide this question. The bank still has rights, based in part upon the $10,500 of notes which the trustee in bankruptcy desires to have surrendered, upon the three-fifths of the proceeds of sale; the title to which is now being litigated in the state courts. If the title to that three-fifths should ultimately be adjudged to be in the bank as trustee for the bondholders, then the bank would be entitled to another dividend upon the $10,500 worth of notes, which I am asked now to require it to surrender for cancellation. I cannot, at this time, interfere with or impair that possible right. In my opinion, the request of the trustee in bankruptcy, even if it may at some time be a proper request, is prematurely made at this time. Without passing upon its merits, if any it has, and without

consideration of or expressing any opinion as to it, I decline to allow it, upon the ground that it is prematurely made.

An order in accordance with this opinion may be entered.

Frederick L. Manning, for trustee.

Hammond & Hammond, for First Nat. Bank of Waterloo.

O'Brien & Short, for bondholders.

HAZEL, District Judge. The trustee in bankruptcy herein has filed a petition for review of an order made and entered by the referee in bankruptcy on the 4th day of August, 1906, which petition states that said order is erroneous, and sets forth nine objections to the same. The facts are fully stated in the written report of the referee.

1. As the First National Bank of Waterloo became liable to the bondholders from the time it sold the property to the Vough Piano Company, the contention of the trustee that the purchase price was used by the latter during a period of two years and seven months before payment of the same to the bank is not material to a determination of the questions presented, and does not constitute a sufficient reason for charging the bank with interest at the rate of 6 per cent. from the date of sale. Neither is it important that the bank sold the property on credit taking security therefor, nor that Mr. Becker, treasurer of the Vough Company, was also an officer of the bank. It may be fairly inferred that the money belonging to the different bondholders was on call at the bank, and therefore is to be regarded in the nature of a deposit. The bank, acting as trustee for the bondholders, certainly should not be punished for exercising a reasonable and apparently commendable discretion in the disposition of the mortgaged property. There being no agreement between the parties in relation to the rate of interest, what rate would be fair and equitable? In view of the circumstances, the amount for which the property was sold was not unreasonably withheld by the bank, nor was it invested or misappropriated. The referee was of opinion that the unusual conditions under which the money was realized and held by the bank required an accounting to the bondholders at the rate of 3 per cent. interest for a period of two years. His reasons for charging interest at a sum less than the legal rate are thought sound. It was the duty of the bank, as trustee, to exercise such reasonable care over the fund as would result only in a fair increment. The first objection presented to the order is overruled.

2. The claim that no allowance should have been made by the referee to the bank for services in paying interest on coupons is sustained. The evidence is open to the inference that compensation for services of this character is sometimes exacted, but they are not infrequently performed gratuitously. It is doubtful whether a charge for such services was contemplated by the parties. In any event, I think the remuneration is covered by the allowance of 2 per cent. mentioned in the next subdivision.

3 and 4. The trustee in bankruptcy contends that the bank performed no services as trustee for the bondholders under the mortgage; hence, it should not have received an allowance as such trustee. The

referee was of opinion that valuable services had been performed by the bank, and it should therefore be compensated. I concur in this view, and also, for the reasons stated in the opinion of the referee, in the allowance of $906.05, for attorney's fees and disbursements incurred by the bank.

5. The amount for services of the attorney for the trustee in bankruptcy and certain bondholders is thought not to be chargeable against the fund in controversy. Such services and expenses were principally incurred for the benefit of the general creditors, and, therefore, should be paid out of the bankrupt estate.

6. The ground of objection that the bank is required to account for the par value of 21 bonds held as collateral to certain notes amounting to $10,500, before any dividend is paid is not sustained. Stress is laid on the decision of the Circuit Court of Appeals in Re Waterloo Organ Co., 13 Am. Bankr. Rep. 477, 134 Fed. 345, 67 C. C. A. 327, and it is argued by the trustee in bankruptcy that, according to the interpretation by such court of the contract transferring the bonds to the bank by the Waterloo Organ Company, their value was fixed at par; for which amount the bank is now bound to account to the company. This contention is not, in my judgment, warranted by the opinion of the court. As between the bank and the organ company, the bonds were issued at par, and could only be sold at par by the company; but the understanding of the parties, as indicated by the written agreement, did not contemplate a sale of the bonds by the bank. Under the agreement the 21 bonds were merely pledged as collateral, and there was no obligation upon the bank to buy them, nor did the agreement amount to a sale to the bank. Had the bank sold the bonds, a different question would be presented; but, not having disposed of them, it was not bound to account therefor at par value. The objection is overruled, and the demand for the return of the notes, as stated by the referee, is premature.

7 and 8. Counsel for trustee in bankruptcy contends that the allowance of $1,075.83, as interest upon the collateral bonds from September 21, 1900, was erroneous and improper, for the reason that such bonds represented no actual indebtedness to the company. In the brief submitted by the trustee in bankruptcy, it is stated that the interest on the other bonds was allowed only from December 1, 1901, while on the collateral bonds the allowance was made from the former date, and that this apparent discrepancy was inadvertently overlooked by the referee. In reply, counsel for the bank states that the interest on the collateral bonds was allowed by the referee according to the proof of claim made by the bank. That Mr. Ditmars and other bondholders did not claim interest from September 21, 1900, is unimportant. It may be assumed that the other bondholders were not entitled to interest from any period other than that claimed by them. If their proofs of claim do not ask for all the interest to which they are entitled, the same may be amended in that respect by proper proceeding before the referee.

9. Finally, the trustee contends that the fees of the stenographer should be paid out of the fund in question. From the examination I

have given the record perhaps the expenses of the stenographer should be divided between the bank and bankrupt estate, but, as the referee has not specially considered this disbursement, and made no recommendation in relation thereto, the question is submitted to him for his decision on application of the trustee in bankruptcy.

The order may be modified as hereinbefore indicated.